FLOYD DAVIS, *Executor, v.* SAFE INSURANCE COMPANY

(CC 552)

Submitted April 14, 1936. Decided May 5, 1936.

*Robt. B. McDougle, Wm. Bruce Hoff,* and *J. J. Yankiss,* for plaintiff.

*S. A. Powell,* for defendant.

LITZ, JUDGE:

This is an action by notice of motion for judgment upon a fire insurance policy of $1,000.00. The case comes here upon certificate from the ruling of the circuit court, sustaining a demurrer to a special replication. The replication was filed to a specification of defense which avers that the policy sued on was not in force at the time of the loss.

The defendant, Safe Insurance Company, is a domestic farm mutual fire insurance company, with its headquarters at Harrisville in Ritchie County. On March 2, 1927, it issued to Lydia E. Spencer a fire insurance policy of $1,000.00 for one year, covering a dwelling in Wood County. The policy was renewed annually thereafter by the issuance of a new policy until 1933. On February 21, 1933, the defendant issued a renewal policy extending the insurance from March 2, 1933, to March 2, 1934. On receipt of the policy, the insured issued and mailed to

defendant her check on a Parkersburg bank, dated February 25, 1933, for $13.63, covering the premium on this and another policy. On March 20, 1933, the check was protested for non-payment on the ground of "no account." By letter dated March 27, 1933, defendant advised the insured that the check had been protested for non-payment, and that the protest fee was $1.50. The letter further stated: "In order to take care of this check, the amount will now be $15.13." By letter of March 29, 1933, the insured replied as follows: "Yours received. The money was in the bank but in the saving dept. And I was in the bank 3 or 4 times to see if the check had come and they said it had not and never notified me. If I send the money for the insurance are the policies good from then on?" To which the defendant on the same date responded: "In reply to above beg to advise that as soon as the premium is paid the policies are then in force." On April 1, 1933, the insured enclosed a money order for the premium on the policy in question and some additional policies, with a letter to defendant, stating: "Find enclosed money order for $21.13 for insurance for the two that the check was sent for and policy 122465." The letter also requested the return of the protested check. On April 3, 1933, defendant returned the money order with a letter to the insured demanding payment of $22.63 to cover the premiums and the protest fee. There was no further communication between the parties, concerning the payment of premium on the policy in question. On April 18, 1933, the property was totally destroyed by fire.

The action was brought by the insured, Lydia E. Spencer, and upon her death revived in the name of her executor, Floyd Davis. The specification of defense and the special replication thereto, involved upon this certification, raise the legal question as to whether or not under the facts detailed the premium in question had been paid before the loss in contemplation of the policy. Counsel for defendant, in assuming the position that the policy was not in force at the time of the fire, contends (1) that acceptance of the premium by the insurer was

required under the policy to render it effective; (2) that the insured was legally responsible for payment of the protest fee; and (3) that the insurer was therefore justified in refusing to accept the premium without payment of the fee. Counsel for plaintiff assert that the insured was not liable for the protest fee, and that the tender of the premium by the insured constituted payment within the meaning of the policy. The policy provides: "No renewal policy shall be in force and effect until the ratio premium as fixed by the board of directors has been paid, and received by the Company, and if the premium on any policy be not received by the Company at or before the beginning of the term of the policy, such policy shall stand suspended until the premium is paid, * * *."

It seems to us that the policy was in effect at the time of the fire, for the reason that the correspondence between the parties, after payment of the check had been refused, amounted to an offer on the part of the defendant to accept the premium, without payment of the protest fee, and that a tender thereof by the insured in compliance with the offer constituted payment in contemplation of the policy. 3 Couch on Insurance, section 637.

A check being an inland bill, was the insured liable for the protest fee? Section 30, article 7, chapter 46, Code 1931, dealing with protests of negotiable instruments, provides: "Where any negotiable instrument has been dishonored it may be protested for nonacceptance, or nonpayment, as the case may be; but protest is not required except in the case of foreign bills of exchange. Where protest of any negotiable instrument is made, the certificate of protest shall be prima facie evidence of what is stated therein or on the foot or on the back thereof in relation to the presentment, dishonor and notice thereof." In 8 C. J., p. 1104, it is stated that no protest fee can be collected where protest is not necessary to fix liability of any party to a negotiable instrument. The question is further considered in Daniel on Negotiable Instruments (7th Ed.), sec. 1086; *Parrill & Boyles* v. *Wood, Bacon*

*& Co.*, 2 Ohio Dec. Reprint 381; *Hall* v. *Bank of U. S.*, 6 Whart. (53 Pa.) 585; *Laud* v. *Merrill*, 47 Me. 351; *Johnson* v. *The Bank of Fulton*, 29 Ga. 259; *German* v. *Ritchie*, 9 Kan. 106; *Woolley* v. *Van Volkenburgh*, 16 Kan. 20; *Cramer* v. *Eagle Manufacturing Co.*, 23 Kan. 399; *Merritt & Myers* v. *Benton*, 10 Wend. (N. Y.) 116. The statement in Daniel follows: "It is considered by high authority that notarial charges are not a legal charge except where the protest is required by the law merchant, although it is certainly usual to pay them where they are reasonable, and made in good faith, and in conformity with usage. It being an entirely unnecessary act to protest an inland bill or a note in order to charge the drawer or an indorser, and purely voluntary and for his own convenience on the part of the holder, there is obvious force in this suggestion. But it is, doubtless, in almost every case the cheapest, easiest, and safest way of proving notice. The defendant would be chargeable with costs of other testimony more cumbrous and more expensive, where liable, and custom has so extensively sanctioned the practice, that we anticipate the courts will be slow to hold that it is not a legitimate charge, in cases where there is a drawer or indorser to charge by notice. But where there is no drawer or indorser to charge, the protest would be useless, and notarial fees could not be recovered, unless, indeed, the protest were authorized by statute, in which case a different rule might perhaps be applicable." The renewal policy being suspended pending payment of the check, no action could have been brought against the maker on the check. The protest was, therefore, a mere gesture. Moreover, whether the insured was liable for the protest fee, it was no part of the premium and its non-payment, therefore, did not justify the insurer in refusing to accept the premium. And, as hereinbefore observed, even though the insurer, in the first instance, might have insisted on payment of the protest fee before accepting the premium, its offer to accept the premium, without qualification, and the tender thereof by the insured in compliance with the offer, constituted payment of the premium within the terms of the policy.

The ruling of the circuit court, sustaining the demurrer to the special replication is, therefore, reversed.

*Reversed and remanded.*